IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| Christopher Demont Owens, | ) | |
| | ) | Civil Action No. 8:09-278-GRA-BHH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| SCDC, Warden McCall, Asst. | ) | |
| Warden Claytor, Asst. Warden | ) | |
| Mauney, Major Bush, Lt. FNU | ) | |
| Monroe, Sgt. NFN Cotter, Lt. | ) | |
| NFN Haroff, Investigator NFN | ) | |
| Shugart, STG Investigator NFN | ) | |
| Pearson, Officer NFN McBee, | ) | |
| Officer NFN Dillard, Nurse Jean | ) | |
| Rutledge, Nurse Amy Enloe, | ) | |
| Dr. Alewine, Director Jon | ) | |
| Ozmint, and Food Supervisor | ) | |
| Bob Olson, | ) | |
| | ) | |
| Defendants.[1] | ) | |
| | ) | |

The Plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42,

United States Code, Section 1983.  This matter is before the Court on the Defendants'

Motion for Summary Judgment.  (Dkt. # 26.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B),

and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all

---

[1]It appears that the Defendant Nurse Enloe's name is incorrectly spelled in the
Plaintiff's complaint and thus on the docket.

pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The Plaintiff originally brought this action in state court. On February 3, 2009, the Defendants removed the case to this Court. On June 5, 2009, the Defendants filed a motion for summary judgment. On June 8, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On July 13, 2009, the Plaintiff filed a response opposing the Defendants' motion.

## FACTS PRESENTED

The Plaintiff is a state inmate within the South Carolina Department of Corrections ("SCDC") currently housed at the McCormick Correctional Institution ("MCI"). At the time of the events alleged in the complaint, the Plaintiff was housed at the Perry Correctional Institution ("PCI").

On July 21, 2008, the Plaintiff alleges that he was in his cell calling out for Officer McBee so that he could change an incorrect address that the Plaintiff had placed on outgoing mail. (Compl. at 5.) He alleges Officer Dillard appeared at his cell door and told him to shut up. (*Id.*) He states that Officer Dillard used racial slurs and then spit in the Plaintiff's face. (*Id.*) The Plaintiff stated that following this, he tried to contact a supervisor to report the incident, but he did not receive a response and, after a couple of minutes, the Plaintiff flooded his cell and the adjoining wing. (*Id.*) He alleges five minutes later, Lt.

Monroe and Sgt. Cutter came to his cell and he showed them the spit on his glasses and face and he asked them what they were going to do about it. (*Id.*) He alleges Lt. Monroe told him, "Nothing, nigger" and walked off. (Compl. at 5.)

On July 24, 2008, the Plaintiff alleges that the Defendants Sgt. Cutter, Lt. Monroe, and Major Bush stripped searched him and read his personal and legal mail. (Compl. At 6.) He alleges some of his personal belongings were confiscated, such as Black and American literature and personal letters. (*Id.*) He states that the Defendants told him they were going to teach him a lesson in reference to the incident with Officer Dillard and he alleges the Defendant Cutter stated that Officer Dillard was "one of us" and pointed to his skin color. On July 24, 2008, the Plaintiff also alleges that an investigation was begun as to whether the Plaintiff had any gang affiliations. (Compl. at 6.) The Plaintiff alleges the investigation was racially motivated. (*Id.*)

At the time, the Plaintiff states that he was on a special diet and was to receive an alternative meal and a B-12 beverage. (Compl at 7.) He alleges that when he was placed in SMU on June 30, 2008, he was taken off the alternate diet and placed on a regular diet until November 5, 2008. (*Id.*) He further contends that cold food trays are served to the black prisoners in lockup. He also contends the food is disproportionate and that his B-12 beverage is watered down. (*Id.*) The Plaintiff states that there is no air conditioning in the summer and no heat in the winter, the inmates cannot wear tee shirts or long johns, and the inmates are only allowed to clean their cells once a week. (Compl. at 7.)

The Plaintiff alleges that the SMU is 99% black, but the overall prison population at PCI is only 60% black. (Compl. at 7.) He claims that black inmates are placed in SMU because of alleged gang affiliation in disproportionate numbers when compared to white inmates. (*Id*.)

The Plaintiff alleges that since November 2006, he has been complaining of foot pain and on July 8, 2008, the podiatrist wrote the Plaintiff a "shoe pass" which would allow the Plaintiff to wear shoes purchased and provided by someone outside of prison. (*Id*.) The Plaintiff alleges that Nurse Enloe denied the Plaintiff his shoes stating that the PCI does not work like that. (Compl. at 7.) The Plaintiff alleges he received a second shoe pass on August 8, 2008, but that the SCDC will not provide him with shoes and will not let him use his own shoes. (Compl. at 8 and 10.) The Plaintiff also alleges that the nurses do not address every one of his medical needs and if he wants medicine, the nurse will not give him his medicine until he steps all the way to the back of his cell. (Compl. at 10.)

The Plaintiff states that there is an SMU policy which limits his reading materials. (Compl. at 8.) He also alleges that every time he comes out of his cell, he is strip searched pursuant to SMU policy and that there are many homosexuals working at the PCI. (*Id*.) The Plaintiff also alleges that for the past six months at 6:00 a.m., at shift change, Lt. Meredith and Sgt. Rodriqez have been calling out to the Plaintiff and banging on his cell window waking him up. (Compl. at 8.) He states that Lt. Meredith told him Major Bush told him to do this to keep the plaintiff from sleeping. (*Id*.) The Plaintiff alleges

this is harassment.  (*Id.*)   The Plaintiff also alleges that his time in SMU ran on October

5, 2008, but he is still in SMU.

**APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved

for summary judgment:

> The judgment sought shall be rendered forthwith if the
> pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show
> that there is no genuine issue as to any material fact and that
> the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate

that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to

summary judgment as a matter of law.  As to the first of these determinations, a fact is

deemed "material" if proof of its existence or nonexistence would affect the disposition of

the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  An issue of material fact is "genuine" if the evidence offered is such that a

reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining

whether a genuine issue has been raised, the court must construe all interferences and

ambiguities against the movant and in favor of the non-moving party.  *United States v.

Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating

to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-

moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

The Plaintiff alleges claims for "outrage, gross negligence, conspiracy, excessive force/assault and battery, denial of medical care, cruel and unusual punishment, racial discrimination, due process, denial of First Amendment, equal protection violations and Fourth Amendment violations."  (Dkt. # 43 - Pl.'s Mem. Opp. Summ. J. Mot. at 1.)  The Defendants contend they are entitled to summary judgment on these claims and further that they are entitled to qualified immunity.  The undersigned agrees.

**Conspiracy**

The Plaintiff alleges the Defendants have at various times conspired to violate his civil rights. To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. *Hinkle*

*v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Thus, an essential element for a claim of conspiracy to deprive a plaintiff of a constitutional right is an agreement to do so among the alleged co-conspirators. *Ballinger v. N.C. Agric. Extension Serv.,* 815 F.2d 1001, 1006-07 (4th Cir. 1987). Without a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy. *Murdaugh Volkswagon v. First Nat'l Bank,* 639 F.2d 1073, 1075-76 (4th Cir. 1981). The plaintiff must allege facts showing that the defendants shared a "unity of purpose or a common design" to injure the plaintiff. *Am. Tobacco Co. v. United States,* 328 U.S. 781, 809-10 (1946).

Where a complaint makes only conclusory allegations of a conspiracy and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint. *See Woodrum v. Woodward County, Okla.*, 866 F.2d 1121, 1126-27 (9th Cir. 1989); *Cole v. Gray,* 638 F.2d 804, 811-12 (5th Cir. 1981). Reviewing the Plaintiff's complaint, the undersigned concludes that the Plaintiff fails to allege any facts indicating that the Defendants acted jointly to injure him, and his conclusory allegations are insufficient to state a claim upon which relief may be granted. *Id.* Accordingly, these conspiracy claims should be dismissed.

**Excessive Force Claims**

The plaintiff alleges excessive force claims based upon his allegations that the Defendant Officer Dillard spit in his face and used racial slurs. As noted above, the Plaintiff alleges that on July 21, 2008, he was in his cell calling for Officer McBee so that

he could change an incorrect address that the Plaintiff had placed on outgoing mail. (Compl. at 5.) He alleges Officer Dillard appeared at his cell door and told him to shut up. (*Id.*) He states that Officer Dillard used racial slurs and then spit in the Plaintiff's face. (*Id.*) The Plaintiff stated that following this, he tried to contact a supervisor, but he did not receive a response and therefore after a couple of minutes the Plaintiff flooded his cell and the adjoining wing. (*Id.*) He alleges five minutes later, Lt. Monroe and Sgt. Cutter came to his cell and he showed them the spit on his glasses and face and he asked them what they were going to do about it. (*Id.*) He alleges Lt. Monroe told him, "Nothing, nigger" and walked off. (Compl. at 5.)

It is well established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To state an excessive force claim, an inmate must show: (1) that the correctional officers acted with a sufficiently culpable state of mind, and (2) that the harm inflicted on the inmate was sufficiently serious. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Absent the most extraordinary circumstances, an inmate must provide proof of more than de minimis injury. *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994). " De minimis injury can serve as conclusive evidence that de minimis force was used." *Riley v. Dorton*, 115 F.3d 1159, 1168 (4th Cir. 1997). *See Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998) (holding

that abrasions on the plaintiff's wrists and ankles and tenderness over the plaintiff's ribs were de minimis ).

Additionally, the PLRA provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering).

Here, the plaintiff has not presented any evidence of any injury other than a de minimis one. *See Harrington v. Rush*, 2009 WL 1616010 (E.D. Ark. 2009)(holding the act of spitting on inmate while yelling racial slurs at is not an "actual injury" sufficient to support an excessive force claim). *See also Gill v. Tuttle*, 93 Fed.Appx. 301, 303 (2d Cir. 2004) (unpublished) (finding that prison guard spitting on prisoner was de minimis use of force); *Williams v. Gobles*, 211 F.3d 127 (6th Cir. 2000)(unpublished) (affirming District Court's sua sponte dismissal of a claim by a prisoner that a corrections officer spit at him, threatened him, and called him a nigger several times for failure to state a claim upon which relief could be granted); *DeMallory v. Cullin*, 855 F.2d 442, 444 (7th Cir. 1988) (holding that correctional officer's spitting upon prisoner does not rise to the level of

constitutional violation). The plaintiff's allegations will not support an excessive force claim and, accordingly, this claim should be dismissed.

**Denial of Medical Care Claims**

The Plaintiff alleges he has been denied medical care in regard to the denial of a request to be allowed to wear shoes either purchased by the Plaintiff from the canteen or sent in from home. The Plaintiff's request for "comfortable" or special shoes sent from home was denied by the SCDC Medical Director's Office as being for "non-specific foot pain." (Defs.' Mem. Supp. Summ. J. Mot. - Enloe Aff. Ex. A. at 8, 10, 13.) The Defendants stated that SCDC policy does not allow for outside shoes that an inmate finds more comfortable than those issued by SCDC. Further, it was noted that the Plaintiff was in SMU or lock-up and was not allowed to purchase shoes or have shoes sent in from home unless they were orthopedic shoes. *Id.*

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

Deliberate indifference is a very high standard.  In *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment."  Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail.  *Estelle*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986).  "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

First, after reviewing the Plaintiff's medical records, the undersigned notes from December 23, 2008, through April 9, 2009, the Plaintiff did not complain of foot pain although he was seen numerous times by medical staff for other ailments.  (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 2 - Enloe Aff. Ex. 5-7.)  Furthermore, the Plaintiff has not been diagnosed with any specific foot deformity or condition.  Several courts have held that non-specific foot pain and/or bunions are not a sufficiently serious medical issue as

to warrant Eighth Amendment protection.[2] *Abney v. McGinnis*, 2007 WL 844675 (S.D.N.Y. Mar. 16, 2007) (holding inmate's foot problems, including hammer toes, bunions, collapsed arches, unerect heels, and laterally drifted big toes were not sufficiently serious); *Hernandez v. Goord*, 2006 WL 2109432 (S .D.N.Y. July 28, 2006) (holding painful hammer toe with an overlap did not meet objective prong of the deliberate indifference standard); *Brown v. DeFrank*, 2006 WL 3313821 (S.D.N.Y. Nov. 15, 2006) (holding pain from bunions not sufficiently serious).

Second, the Plaintiff's disagreement with the Defendants' conclusion that the other shoes were not medically necessary simply does not amount to a constitutional violation. *Guillen v. Stanley,* 2006 WL 2065571 at *5-6 (E.D.Tex. July 24, 2006)(unpublished) (holding that prisoner's disagreement with medical personnel's opinion that he did not need medical boots did not amount to a constitutional violation); *Thomas v. Herrera,* 2005 WL 3307528 at *6 (S.D.Tex. Dec.6, 2005) (unpublished)(holding that plaintiff's disagreement with doctor's failure to prescribe him special work boots was not a cognizable constitutional claim; "Indeed, even if plaintiff could establish that orthopedic boots were appropriate, his claim would amount to no more than negligence, which is not actionable").  The Plaintiff has failed to show any serious medical need which would justify orthopedic shoes.  In fact, the podiatrist did not order any orthopedic shoes, he merely recommended  that the

---

[2]The Plaintiff states it is his arches that cause him pain.  However, it appears from his medical records that bunions were the original diagnosis. (Defs.' Mem. Supp. Summ. J. Mot. - Enloe Aff. Ex. A at 2; 4.)

Plaintiff be allowed a shoe accommodation, such that the Plaintiff could purchase more comfortable shoes or have them sent in from home.  (Defs.' Mem. Supp. Summ. J. Mot. - Enloe Aff. Ex. 1 at 3.)  At best, the evidence supports an inference that other shoes might have made the Plaintiff more comfortable but the absence of comfort does not rise to the level of a serious medical need for Eighth Amendment purposes.  Based on the Plaintiff's medical records attached, no reasonable jury could find that Defendants were subjectively deliberately indifferent to the Plaintiff's serious medical needs.[3]  Accordingly, this claim should be dismissed.[4]

**Cruel and Unusual Punishment Claim**

The plaintiff alleges claims for cruel and unusual punishment due to the conditions in the SMU.  The Plaintiff states that in SMU the food is cold, there is no air conditioning in the summer and no heat in the winter, the inmates cannot wear tee shirts or long johns, and the inmates are only allowed to clean their cells once a week.  (Compl. at 7.)

The Eighth Amendment to the United States Constitution protects inmates from cruel and unusual living conditions.  *Rhodes v. Chapman*, 452 U.S. 337 (1981).  However, inmates are not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement.  *Id.* at 347. In order to state a claim of

---

[3]Furthermore, the non-medical defendants in this action were entitled to rely on the medical judgments and advice of the prison medical staff. *See Miltier,* 896 F.2d at 854.

[4]The Plaintiff also alleges that the nurses do not address every one of his medical needs and if he wants medicine, the nurse will not give him his medicine until he steps all the way to the back of his cell.  (Compl. at 10.)  These vague and conclusory allegations clearly do not state a medical indifference claim.

constitutional significance, a prisoner must satisfy both an objective and subjective component. *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). To satisfy the objective component, a prisoner is required to demonstrate an "extreme" deprivation. *Id.* Specifically, "the prisoner 'must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Id.* (*quoting Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir.1993)). Additionally, to satisfy the subjective component, the prisoner must allege facts which show that prison officials acted with "deliberate indifference." *Strickland*, 989 F.2d at 1379. Additionally, as noted above, the PLRA requires a physical injury and the Plaintiff has failed to allege or establish a physical injury relating to the condition in the SMU at PCI.

Though such conditions as alleged by the Plaintiff could rise to the level of constitutional violations if they resulted in serious deprivations of identifiable human needs, the Plaintiff has not shown, or even alleged, that he has sustained any serious or significant physical or emotional injury as a result of these conditions. *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993); *Norman v. Taylor*, 25 F.3d 1259, 1264-65 (4th Cir. 1994).

Furthermore, prisoners have a right only to adequate food. It need not be either tasty or even appetizing. *See Williams v. Berge,* 102 Fed. Appx. 506 (7th Cir. 2004) (serving moldy raisins and rancid peanut butter). Smaller portions or a failure to provide

a special diet cannot satisfy the first element of a retaliation claim unless such provisions either prove inadequate or rise to the level of cruel and unusual punishment in violation of the Eight Amendment. *See Henderson v. Commonwealth of VA*, 2008 WL 204480, at *4 (W.D.Va. January 23, 2008.) The plaintiff has produced no evidence that the meals he has been served in SMU were so inadequate that they constituted cruel and unusual punishment. However, as stated above, even if the Plaintiff could establish the first element of his claim, he has not produced any evidence of an actual injury. Accordingly, the Defendants should be granted summary judgment on these claims.

**Equal Protection, Due Process, and Racial Discrimination Claims**

The Plaintiff alleges that black inmates are placed in SMU more frequently than white inmates. He also alleges that the Disciplinary Hearing Officer at the PCI is racially biased and is more lenient with white inmates.

It has long been settled that "[p]risoners are protected under the Equal Protection Clause . . . from invidious discrimination." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to establish an equal protection claim, an inmate must show that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

The Plaintiff has not offered any evidence that he was treated differently than other inmates with whom he is similarly situated and that the unequal treatment was the result

of intentional or purposeful discrimination. The Plaintiff merely makes bald allegations regarding discrimination without any support which are insufficient to survive summary judgment. *White v. Boyle*, 538 F.2d 1077, 1079 (4th Cir. 1976) (conclusory allegations insufficient to avoid summary judgment).

Furthermore, in order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. *Beverati v. Smith,* 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). The Plaintiff has not alleged any atypical and significant hardships which would support a deprivation of due process claim. Accordingly, based on the foregoing, the Defendants should be granted summary judgment on the Plaintiff's equal protection claim.

**First Amendment Claims Relating to Reading Materials[5]**

The Plaintiff contends that the SCDC policy limiting access to written materials, books, and magazines for those inmates in SMU violates the First Amendment. The SCDC policy for SMU inmates has been held to be rationally related to legitimate and neutral governmental objectives. *Koon v. Ozmint,* 2007 WL 1486067 (D.S.C. 2007)(finding the policy creates an incentive or motivation for SMU inmates to change their behavior, reduces a potential fire hazard in the SMU, reduces the places an SMU inmate can hide drugs and weapons, and deters improper uses of books, magazines, and newspapers to cover cell windows to conceal activity within their cell, jam the locks to prevent entry into their cell, and stop up toilets). See also *Corey v. Reich,* 2004 W L 3090234 (D.S.C. March 9, 2004); *Strong v. Ozmint,* C.A. No. 2:03-2256 (D.S.C. March 23, 2004); *Incumaa v. Ozmint,* C.A.No. 0:03-2776 (D.S.C. September 17, 2004). Accordingly, the Defendants should be granted summary judgment on this claim.

---

[5]To the extent the Plaintiff is attempting to allege a claim relating to the confiscation of his personal property, such a claim should be dismissed. The Due Process Clause is not implicated by a negligent act of a state official causing unintended loss of or injury to life, liberty, or property. *Daniels v. Williams,* 474 U.S. 327 (1986); *Pink v. Lester,* 52 F.3d 73, 75 (4th Cir. 1995). Moreover, an intentional deprivation of property by a state employee, if unauthorized, does not violate the Due Process Clause if a meaningful post-deprivation remedy for loss is available. *Hudson v. Palmer,* 468 U.S. 517 (1984). In South Carolina, prisoners may bring an action for recovery of personal property against officials who deprive them of property without state authorization. *See McIntyre v. Portee,* 784 F.2d 566, 567 (4th Cir. 1986)(*citing* S.C. Code Ann. § 15-69-10 et seq.).

**Fourth Amendment Claims Regarding Strip Searches**

The Plaintiff alleges that he is subject to visual cavity and strip searches in violation of his constitutional rights. Inmates do not enjoy a right to be free from all indignities. The constitutionality of prison officials performing strip searches on jail inmates is well established. *Bell v. Wolfish,* 441 U.S. 520, 559 (1979) (finding that body cavity searches are reasonable under the Fourth Amendment because in prisons the "[s]muggling of money, drugs, weapons, and other contraband is all too common an occurrence"); *Franklin v. Lockhart,* 883 F.2d 654 (9th Cir.1989) (approving twice-a-day visual body cavity searches for inmates in disciplinary and administrative segregation); *Michenfelder v. Sumner,* 860 F.2d 328, 332-333 (9th Cir. 1988) (finding strip searches when entering and leaving cells not excessive even if the prisoner is escorted from one portion of a unit to the next. Numerous courts have upheld routine strip searches of segregated inmates based upon security concerns. *See, e.g., Rickman v. Avanti,* 854 F.2d 327, 328 (9th Cir.1988) (holding prison policy requiring prisoners in segregation unit to submit to strip searches when leaving their cells for recreation, medical treatment, visitation, and use of law library was found constitutional); *Goff v. Nix,* 803 F.2d 358, 370-71 (8th Cir.1986) (holding visual body cavity search of segregation unit inmates before and after going to exercise area to prevent passage of contraband constitutional); *Campbell v. Miller,* 787 F.2d 217, 228 (7th Cir. 1986) (permitting visual body cavity searches of high security inmates being transported to law library).

Here, SMU inmates are subject to routine visual body cavity and strip searches when they enter or leave their cells. In his complaint, the Plaintiff merely makes unsupported and conclusory allegations that there are numerous homosexuals working at PCI. The Plaintiff has produced no evidence that the Defendants' actions run afoul of constitutional standards. As such, the Defendants' motion for summary judgment as to these claims is granted.

**Claims Regarding Mail**

The Plaintiff contends the Defendants are opening and reading all his incoming legal mail and violating his constitutional rights. The Defendants deny this allegation and also contend the Plaintiff has not shown any evidence to support such a claim.

The United States Court of Appeals for the Fourth Circuit, in *Altizer v. Deeds*, 191 F.3d 540, 547-548 (4th Cir. 1999), held that "the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and therefore, constitutional . . ." However, in a footnote to that opinion, the court noted that "[i]nspecting an inmate's legal mail may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case." *Id.* at 549, n. 14 (citing *Wolff v. McDonnell*, 418 U.S. 539, 575 (1974)).

Even assuming the Plaintiff's rights were implicated by the opening and/or reading of his incoming legal mail, the Plaintiff has failed to state a claim because he has not alleged any injury. The courts distinguish between outgoing and incoming mail because

one can easily conceive of legitimate penological interests in ensuring that no contraband or harmful substance comes into the prison through the mail. Thus, the mere opening of incoming legal mail in the recipient's absence does not raise a claim of constitutional magnitude. *Griffin v. Virginia*, 2002 WL 32591574 *3 (2002), aff'd, 67 Fed. Appx. 837 (4th Cir. 2003). To establish that his rights have been violated by opening incoming legal mail, an inmate must demonstrate that there was some actual harm or prejudice to his ability to communicate with the court or counsel. *Griffin*, 2002 WL 32591574 *3 (*citing Lewis v. Casey*, 518 U.S. 343 (1996)). The Plaintiff has not alleged any harm or prejudice in any court action resulting from the opening of his incoming legal mail. In fact, the Plaintiff has not even alleged that he had a court case pending at the time. Therefore, the Plaintiff has failed to allege or establish any actual harm or prejudice. Accordingly, he has failed to state a claim regarding his legal mail and the Defendants should be granted summary judgment on this claim.

**Failure to Timely Respond to Grievance**

The Plaintiff alleges that the Defendants do not timely respond to grievances. Even if the defendants failed to timely respond to the plaintiff's grievances, the plaintiff has not stated a constitutional claim. The law is well-settled that there is no constitutional right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-138 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d

72, 75 (4th Cir.1944) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"). Accordingly, any claims regarding the failure to timely respond to grievances should be denied.

## Qualified Immunity

The Defendants also raise the defense of qualified immunity, which requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). However, because there is no evidence that any specific right of the Plaintiff was violated, it is unnecessary for this Court to address the qualified immunity defense. *See Porterfield v. Lott*, 156 F.3d 563, 567(4th Cir. 1998)(when the court determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist.").

## State Law Claims

Having recommended dismissal of the Plaintiff's federal claims, it is further recommended that the Court should decline to exercise supplemental jurisdiction over the Plaintiff's state law claims of outrage, negligence, assault and battery, and confiscation of personal property. *See* 28 U.S.C. § 1367(c).

## CONCLUSION

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. # 26) be GRANTED, and the Plaintiff's complaint be DISMISSED with prejudice.

**IT IS SO RECOMMENDED.**

_Bruce H. Hendricks_
BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

October 22, 2009
Greenville, South Carolina

**The Plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).